IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Kevin Ray Asbury ) | Case No. 08-21989-7-drd |
| Yvette Marie Asbury ) | |
| Debtors. ) | |
| ) | |

## MEMORANDUM OPINION

Kevin Asbury (Debtor) filed a motion asking this Court to approve a written waiver of his right to a discharge pursuant to 11 U.S.C. § 727(a)(10). David and Sharon Jones, Sand Cattle Company, LLC, and Alliant Bank (Creditors) filed objections to the motion asking this Court to deny the Debtor's requested waiver of discharge and to proceed to decide non-dischargeability claims against the Debtor, on which they believe this court has jurisdiction to enter a money judgment against him. These are core proceedings under 28 U.S.C. § 157(b)(2)(J) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The Court held hearings on this matter at the Federal Courthouse in Jefferson City, Missouri, on May 21 and June 23, 2009. At the conclusion of the June hearing, the Court took the matter under advisement. After a review of the evidence and consideration of the relevant law, I am now ready to rule. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the Debtor has not demonstrated that a waiver would be appropriate in this case and that I have jurisdiction to enter a money judgment for non-dischargeable debt.

## II. FACTUAL BACKGROUND

Debtor filed for bankruptcy under Chapter 7 in this district on October 31, 2008. Fifty-five creditors have filed claims against him and those claims total more than $11 million. Several of those creditors have filed adversary proceedings against the Debtor under the various provisions of 11 U.S.C. §§ 523 and 727 objecting to his receipt of a discharge. Many of these claims have not been adjudicated by a prior court and are unliquidated. After filing this case, the Debtor relocated to Florida, where he currently resides.

On April 4, 2009 the Debtor made a motion to dismiss his case. This motion was withdrawn when the trustee objected on the grounds that the estate had assets which could be sold to pay creditors. Upon withdrawal of the motion for dismissal, the Debtor filed a motion for a waiver of discharge, which applied only to himself. The Court held a hearing on the matter to determine whether the Debtor understood the effect of this motion and to receive clarification on why this motion was executed. I asked the Debtor whether he had been fully advised by his attorney that following this motion his nonexempt property would be fully liquidated but his creditors would still have the option to seek a judgment against him and attempt to execute on any assets he may have. He answered these questions affirmatively.

The Debtor claims that granting a waiver of discharge will save litigation costs and that he lacks sufficient funds to defend himself against the adversary complaints. Creditors counter that litigation costs are inevitable because if the Court grants the waiver, they will then have to file suit to initiate collection efforts. They allege that the Debtor may be seeking to avoid a discharge in this forum to preserve the option of filing a subsequent Chapter 13 case, potentially discharging additional debts. They believe that having to travel and litigate in Florida to

liquidate and determine the dischargeability of their claims will increase rather than decrease litigation costs. To avoid these costs, the creditors argue that this Court should adjudicate their non-dischargeability claims and enter a money judgment. The Debtor argues that I lack jurisdiction to enter a money judgment.

### III. DISCUSSION

I begin by addressing whether the waiver of discharge should be approved and then discuss the scope of this Court's jurisdiction if the waiver is denied. The ability to waive a discharge is found in 11 U.S.C. § 727(a)(10) which provides that "the court shall grant the debtor a discharge, unless . . . the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter." Section 727(a)(10) waives the right to any discharge at all, and the debtor's non-exempt assets may still be liquidated by the trustee but any unpaid debts survive. *In re Martin*, 211 B.R. 23, 24 (Bankr. E.D. Ark. 1997); 6 Henry J. Sommer, et al., Collier on Bankruptcy ¶ 727.12 (15th Ed. 2009).

While the Code does not provide guidelines for approving a waiver, "it is doubtful . . . that pro forma approval is contemplated."  4 William L. Norton, Jr., Norton Bankr. L. & Prac. 3d § 86:19 (2009). Courts have typically stressed four requirements for an effective waiver of discharge: (1) the waiver must be approved by the court; (2) the waiver must be in writing; (3) the waiver must be signed by the debtor; and (4) the waiver must be given after the order for relief (post-petition). *In re Cheripka*, 122 B.R. 33, 37 (Bankr. W.D. Pa. 1990). Besides obtaining court approval, all other requirements have been satisfied and therefore, I must now determine the circumstances under which a court should approve a written waiver of discharge.

Two bankruptcy courts in the Eighth Circuit have evaluated debtor requests for a waiver of discharge. Both considered whether granting the motion was in the debtor's interest and whether the debtor clearly understood the consequences of his decision, while one court also placed some consideration on the debtor's motives. In *In re Rul-lan*, 186 B.R. 938, 943 (Bankr. W.D. Mo. 1995), the court found that the waiver of discharge must represent a conscious and informed judgment by the debtor of its consequences, specifically denote the creditor(s) it covers, and any terms or provisions qualifying such waiver. *See also In re Mapother*, 53 B.R. 433, 435-36 (Bankr. W.D. Ky. 1985). This requirement protects debtors from unintentionally waiving a discharge by misunderstanding the scope of an agreement or otherwise losing rights they would be entitled to under the Code.

A similar standard was applied in *In re Martin*. The court initially held a hearing to determine whether the debtor acted with informed judgment due to the importance of the discharge in bankruptcy and because of the legal effect of the waiver. After her responses to questions from the court made it clear she did not understand the impact of her decision despite her testimony that she had discussed it with her attorney, the debtor's request for a written waiver was denied. *In re Martin*, 211 B.R. at 24 ("When the Court advised the debtor that the waiver of discharge would not release the trustee from his duties and that the trustee would continue to liquidate her assets, including completing his settlement of her law suits, she was stunned."). The *Martin* court also placed some consideration on the debtor's intent to prejudice creditors. The court determined that "she is merely using the provision of section 727(a)(10) in a further attempt to thwart [her] creditors." *Id.* at 25. Though not the controlling factor, the court considered her bad faith intentions as part of the rationale in denying her waiver, stating

4

that "while the debtor's motives alone do not require disapproval of the waiver, the debtor's motives, together with her reaction to the Court's questions, her demeanor and testimony, evidence that she does not truly understand the import and legal effect of the waiver of discharge." *Id.*

After listening to the Debtor's testimony and responses to questions from the Court, I am not convinced that he has demonstrated that a written waiver of discharge is in his best interest or that he clearly understands the legal consequences of his decision. The Debtor's sole stated justification for seeking the waiver is that he lacks the funds to defend himself in continued legal battles. However, this explanation does not make sense. Further litigation is inevitable as long as creditors' claims remain unliquidated. Many of these claims involve a substantial amount in controversy and creditors will likely pursue their claims in Florida if they do not meet venue or personal jurisdiction requirements in Missouri. Even if avoiding continued legal costs was critical to the Debtor, he has a better vehicle available for this purpose. Instead of waiving a discharge under § 727(a)(10), which exposes him to liability to all creditors, including those that failed to file timely claims, the Debtor could have consented to judgment solely on the § 523 claims he was facing.

The legal consequences of a waiver will extend beyond this case and result in the Debtor losing the ability to receive bankruptcy protections in subsequent filings. If he files for Chapter 7 bankruptcy in the future, the debts he faces in this case will fall under § 523(a)(10) which prohibits him from discharging debt "that was or could have been listed or scheduled by the debtor in a prior case." 11 U.S.C. § 523(a)(10). In a subsequent Chapter 13 case, while §

5

523(a)(10) would not limit the scope of his discharge, claims alleged to be non-dischargeable under § 523(a)(2) would still have to be litigated.

The Debtor's decision to seek a waiver of discharge, despite the inevitable litigation costs and the legal consequences of his decision, suggests the Debtor simply does not want a discharge entered. His creditors are concerned that he is avoiding discharge in order to preserve his ability to file a Chapter 13 case in Florida once he qualifies to file there. As noted, § 523(a)(10) is not applicable to Chapter 13 filings. Creditors desiring to challenge the dischargeability of their claims under other subsections of § 523(a) would be compelled to file new adversary proceedings in Florida. The Debtor responds that he is not eligible to file a Chapter 13 case because of the large dollar amount of debt he owes. Section 109(e) limits Chapter 13 filings to debtors with "noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650." 11 U.S.C. § 109(e). However, the claims in this case are not liquidated and will likely not become liquidated until a court enters a money judgment on the creditors' claims. Thus § 109(e) will not prevent the possibility that a Chapter 13 case could be filed if the waiver is granted.

The Court places some weight on the prejudice to creditors that would result from granting a waiver. The Debtor chose to litigate in this forum and consented to jurisdiction before this Court. By filing in the Western District of Missouri, his creditors were forced to act by filing adversary complaints, paying filing fees, and obtaining counsel to represent their interests. While not a great deal of litigation has progressed thus far in this case, granting a waiver of discharge would still impose additional costs and delay on these creditors. One might think creditors would benefit from the Debtor's waiver of discharge, but they lose the

right to liquidate their claims in pending proceedings. This Court is concerned that the Debtor is attempting to manipulate venue, hoping to make litigation against him difficult and expensive by retreating to another jurisdiction. Creditors would be forced to pay additional filing fees, obtain new attorneys, and possibly travel to a distant state in order to litigate their claims and obtain a money judgment. The creditors' claims are currently unliquidated, and they appeared in this forum to have this Court decide the merits of their claims and any amount to which they may be entitled. This interest weighs against the Court approving a written waiver of discharge.

The Debtor counters in part by arguing that this Court lacks jurisdiction to enter a money judgment on non-dischargeable debts. There is a split of authority among bankruptcy courts on this question. Most published decisions conclude that bankruptcy courts do have jurisdiction to liquidate non-dischargeable claims. *In re Cambio*, 353 B.R. 30, 32 (1st Cir. B.A.P. 2004) (defining the majority position that jurisdiction exists as the "expansive approach" and the minority view that bankruptcy courts cannot render a money judgment as the "limited jurisdiction approach").

Arguments for the expansive approach focus on theories of judicial economy and cost avoidance as well as the bankruptcy court's inherent equitable powers to resolve disputes between parties. Excess costs to the parties are avoided by the court determining the monetary value of a non-dischargeable claim when the case involves a close factual and logical relationship between the dischargeability proceeding and the underlying debt. Liquidating the claim saves judicial resources by having one panel, instead of two, decide the merits of the same set of facts. *See*, *e.g.*, *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir.1997) ("It is impossible to separate the determination of the dischargeability function from the function of fixing the amount of the non-dischargeable debt."). Allowing the bankruptcy

court to render a money judgment provides finality to the case by allowing the court to decide the dispute in its entirety.  Parties appearing before a court consent to that court's resolution of their dispute. *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir.1991) (adopting the expansive approach because parties properly before the court subject themselves "to all the consequences that attach to an appearance").  Disputes would be extended if bankruptcy courts could only provide partial resolution by deciding that a claim is non-dischargeable.  Creditors would then require a different forum to determine the value of their claim.

Courts adopting the limited jurisdiction approach conclude that monetary awards for non-dischargeable debt exceed the power granted to bankruptcy courts under the Code and raise issues appropriate only in the non-bankruptcy forum.  *Porter Capital Corp. v. Hamilton (In re Hamilton)*, 282 B.R. 22, 24 (Bankr. W.D. Okla. 2002) ("Determination of dischargeability of a debt is a limited function under the Code. It only defines the scope of discharge and does not substitute for a full and complete determination of all claims and defenses which can be asserted under non-bankruptcy law."). Other courts have argued that  legislative and policy changes in bankruptcy law indicate a desire to restrict the power of the bankruptcy courts.  Section 17(c)(3) of the former Bankruptcy Act required a bankruptcy court to enter a money judgment and make necessary orders for its enforcement when determining the dischargeability of a debt.  *First Omni Bank, N.A. v. Thrall (In re Thrall)*, 196 B.R. 959, 964 (Bankr. D. Colo. 1996).  However, the more recently enacted Bankruptcy Code explicitly mentions dischargeability but is silent about issuing money judgments against the debtor. *Id.* This has led some courts to conclude that Congress meant to take this power away from the bankruptcy courts.  *See Id.* at 964-966

(arguing that "continu[ing] past practice impermissibly enlarges the authority granted to this Court, ignores the special, limited role of this Court in the federal system and vis-a-vis the state legal system, and potentially deprives litigants of a full and fair opportunity to have the enforceability of their claims and defenses comprehensively determined.").

While neither the Court of Appeals nor the Bankruptcy Appellate Panel for this Circuit have decided this issue, the Second, Sixth, Seventh, and Ninth Circuit Court of Appeals, as well as the Tenth Circuit Bankruptcy Appellate Panel have held that "there is federal bankruptcy jurisdiction to liquidate and enter a judgment on a non-dischargeable debt." *In re Cambio*, 353 B.R. at 32. No appellate court has adopted the limited jurisdiction approach.

Courts in this circuit have found that "it is generally accepted that a Bankruptcy Court may enter a dollar judgment in actions to bar dischargeability." *In re Croft*, 1994 WL 570889, *1 (Bankr. E.D. Mo. Oct. 6, 1994); *See also In re Kinney*, 114 B.R. 670, 671 (Bankr. D. Neb. 1990) ("As an incident to a primary case or controversy over which a federal court has proper jurisdiction, the court may resolve additional claims between parties which relate to or arise out of the factual transaction. . ."); *In re Mask*, 171 B.R. 353 (Bankr. E.D. Mo. 1994) (granting a money judgment for non-dischargeable credit card fraud).[1] In conformity with the bankruptcy courts of this Circuit and the appellate courts which have considered this issue, I find that I have jurisdiction to enter a money judgment on claims for non-dischargeable debts.

---

[1] At the June 18th hearing the Debtor cited *In re Valley Food Services, LLC*, 400 B.R. 724 (Bankr. W.D. Mo. 2008) in opposing jurisdiction. In *Valley Food Services*, the Court found that it did not have supplemental jurisdiction over a suit by the debtor's corporate officer against a bank whose failure to file a continuation statement resulted in the officer being sued by the Trustee. This case did not raise the issue of whether a money judgment for non-dischargeable debt is proper. The *Valley Food Services* case is distinguishable. Not only did it not involve the liquidation of a claim in the context of a dischargeability determination, it was a dispute between non-debtors. The precise question before the Court in that case was whether a bankruptcy court may exercise supplemental jurisdiction under 28 U.S.C. § 1367. That is not the question before this Court.

## IV. CONCLUSION

Therefore, for the above reasons, I find that the Debtor has not demonstrated that this court should approve his waiver of discharge and that I do have jurisdiction to liquidate the amount owed on any non-dischargeable claims creditors are able to prove in their adversary cases. The Debtor's motion for a waiver of discharge under § 727(a)(10) is DENIED. A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated: July 14, 2009                             /s/ Dennis R. Dow

                                                 THE HONORABLE DENNIS R. DOW
                                                 UNITED STATES BANKRUPTCY JUDGE